IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM DAVID ABBOTT, JR., # 280779,   ) | |
|                       ) | |
|     Petitioner,           ) | |
|                       ) | |
|      v.                ) | Civil Action No. 1:14cv597-MHT |
|                       ) | (WO) |
| CHRISTOPHER GORDY, *et al.*,     ) | |
|                       ) | |
|     Respondents.        ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter concerns a petition for writ of habeas corpus under 28 U.S.C. § 2254 filed by

Alabama inmate William David Abbott, Jr. ("Abbott").  Doc. No. 1.[1]

## I.  BACKGROUND

In November 2011, a Houston County grand jury indicted Abbott for trafficking

methamphetamine in violation of § 13A-12-231, Ala. Code 1975; possession of a controlled

substance (hydrocodone) in violation of § 13A-12-212, Ala. Code 1975; and first-degree

possession of marijuana in violation of § 13A-12-213, Ala. Code 1975.  The case went to trial in

August 2012.  The Alabama Court of Criminal Appeals summarized the evidence[2] as follows:

> At the time of Abbott's arrest, Abbott was on probation with the Houston
> County Probation Office.  Parole Officer Will Johnston was Abbott's probation and
> parole supervisor and had spoken to Parole Officer Stan Devane regarding a
> complaint that had been received concerning Abbott.  The complaint alleged that
> Abbott was selling methamphetamine from a certain residence located in Ashford,

---

[1] Document numbers ("Doc. No.") are those assigned by the Clerk of Court in this civil action.
Page references are to those assigned by CM/ECF.

[2] The Alabama Court of Criminal Appeals' summary of the evidence, under the heading "Facts,"
includes evidence presented at a pretrial suppression hearing as well as evidence presented at trial.
Some of the evidence presented at the suppression hearing, which included certain hearsay
statements, was not presented at trial.

Alabama; that Abbott possessed a large amount of methamphetamine; and that Abbott possibly had weapons in the residence.  The complaint indicated that this residence was located at [address redacted], Ashford, Alabama.  On July 14, 2011, Officers Johnston, Devane, Portman, Brown, and Turner investigated the complaint and followed the complainant to the Ashford residence.

Shortly after arriving at the residence, Abbott drove up on a motorcycle. When the officers attempted to block his travel, Abbott initially came to a stop, but then drove around the officers and attempted to leave at a high rate of speed.  While attempting to escape, Abbott lost control of the motorcycle, and ran into the woods. The officers promptly located Abbott and took him into custody.

Abbott had in his possession a glass tube smoking device and a pipe.  Also, on the motorcycle, there was a black case with off-white crystals, a digital scale, and empty plastic baggies.  When the officers asked Abbott where he lived, Abbott answered that he did not live at that residence.

Officers then went to the residence at [address redacted], where they found two individuals: Lisa Marie Hallford and William Fowler.  Both Hallford and Fowler informed the officers that Abbott lived at the residence. Fowler admitted that he lived there also. Fowler allowed the officers to enter and search the residence.

Upon entering, the officers located a bedroom with a wooden sign that read "David's Place" hung above a mirror.  In this bedroom, the officers also found pictures of Abbott and his girlfriend, and numerous DVDs with Abbott's name on them. Hallford then informed the officers that she had purchased methamphetamine from Abbott, and that Abbott had retrieved the drugs from his closet.

While searching the closet in the bedroom, the officers found containers with marijuana, pills and jewelry.  The officers also found a safe that contained pills and a large amount of crystal-like material believed to be methamphetamine. Testing revealed the substances recovered were hydrocodone, marijuana, and methamphetamine. Although Abbott denied living at this residence, the State charged Abbott with possession and trafficking of these controlled substances.

Doc. No. 10-8 at 2-3.

On August 23, 2012, the jury found Abbott guilty of all charges in the indictment.  The trial court sentenced Abbott as a habitual felony offender to life in prison on all three charges and ordered the sentences to run concurrently.  Abbott filed a motion for new trial, and the trial court denied that motion on August 30, 2012.

Abbott appealed, raising these claims:

1.    Officers violated his Fourth Amendment rights in searching the residence where the drug evidence was found; therefore, the trial court erred by denying his motion to suppress this evidence.

2.    The State's evidence was insufficient on each charge; therefore, the trial court erred by denying his motion for judgment of acquittal.

3.    The trial court erred by denying his motion for mistrial based on the prosecutor's improper comment during the State's closing argument.

4.    The trial court erred by admitting evidence over the defense's chain-of-custody objection.

Doc. No. 10-7 at 31-50.

On July 3, 2013, the Alabama Court of Criminal Appeals issued an unpublished memorandum opinion affirming Abbott's conviction and sentence. Doc. No. 10-8. Abbott applied for rehearing, which was overruled on August 9, 2013. *See* Doc. No. 10-9 at 6. He then filed a petition for writ of certiorari with the Alabama Supreme Court (Doc. No. 10-9), which that court denied on September 13, 2013 (Doc. No. 10-10). A certificate of judgment was entered that same date. Doc. No. 10-11.

On June 12, 2014, Abbott, proceeding *pro se*, initiated this federal habeas action by filing a § 2254 petition asserting the same four claims he presented to the Alabama Court of Criminal Appeals in his direct appeal. Doc. No. 1. The respondents answer that Abbott's claims were properly adjudicated on the merits by the state courts and that he is not entitled to federal habeas relief. Doc. No. 10 at 6-10; Doc. No. 22 at 2-17. In addition, the respondents argue that Abbott's claim that his Fourth Amendment rights were violated in the search of the residence where the drugs were discovered is precluded from review by this court under the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976), because Abbott had an opportunity for full and fair litigation of his Fourth Amendment-related issues in the state courts. Doc. No. 22 at 4-5

After careful review of the § 2254 petition, the parties' submissions, and the record in this case, the undersigned finds that Abbott's petition should be denied without an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.   DISCUSSION

### A.   Abbott's Fourth Amendment Claim and *Stone v. Powell*

Abbott claims that officers violated his Fourth Amendment rights in searching the residence where the drug evidence was found and that, therefore, the trial court erred by denying his motion to suppress this evidence.  Doc. No. 1 at 37-55.

Abbott raised his Fourth Amendment claim in a motion to suppress that was the subject of a pretrial suppression hearing at which the trial court took testimony from several witnesses, including Abbott's probation officer (Will Johnston), a police officer who participated in the investigation of Abbott (Ray Mock), Abbott's sister, Abbott's mother, and Abbott himself.  *See* Doc. No. 22-2 at 117-71.  In his testimony, Abbott denied that he resided at the Ashford, Alabama, residence where the drugs were found; claimed that he had never spent the night at that residence; and maintained that he had never lived in Ashford.  *Id*. at 164-69.  Following the hearing, the trial court denied the motion to suppress.

Although the State did not raise the issue of Ashford's standing to challenge the search, the trial court stated that it had "some serious doubt as to whether the defendant even has the standing to object to the search," noting that Abbott denied that he lived at the residence.  *Id*. at 170-71.  The court also stated, "If it's not his residence, then what standing would he have to challenge a search of that residence?"  *Id*. at 171.  The trial court held that, regardless of the standing issue, the search was lawful based on the terms and conditions of Abbott's probation, which provided

4

that Abbott was subject to a search of his person, his vehicles, or the homes or residences where he stayed at any time. *Id*. at 121, 170-71.

Abbott pursued his Fourth Amendment claim on appeal, where the Alabama Court of Criminal Appeals affirmed the trial court's judgment. In pertinent part, the appellate court stated:

> To challenge a seizure as violating the Fourth Amendment, a defendant must have standing, that is, a legitimate expectation of privacy in the premises. *Rakas v. Illinois*, 439 U.S. 128 (1978). As a result, the Fourth Amendment protects an individual in those places where he can demonstrate a reasonable expectation of privacy against government intrusion. *See Katz v. United States*, 389 U.S. 347, 353 (1967). Fourth Amendment rights are personal, and only individuals who actually enjoy the reasonable expectation of privacy may challenge the validity of a government search. *Rakas v. Illinois*, 439 U.S. at 143; *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000). In *Jones v. State*, 946 So. 2d 903 (Ala. Crim. App. 2006), this Court explained:
>
> > "'An appellant wishing to establish standing to challenge the introduction of evidence obtained as a result of an alleged violation of the Fourth Amendment must demonstrate that he has a legitimate expectation of privacy in the area searched. *Cochran v. State*, 500 So.2d 1161 (Ala.Cr.App. 1984), rev'd in part on other grounds, 500 So.2d 1179 (Ala. 1985), on remand, 500 So.2d 1188 (Ala.Cr.App. 1986), aff'd, 500 So.2d 1064 (Ala.1986), cert. denied, 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 537 (1987).... "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). "For a search to violate the rights of a specific defendant, that defendant must have a legitimate expectation of privacy in the place searched, and the burden is squarely on the defendant asserting the violation to establish that such an expectation existed." *Kaercher v. State*, 554 So.2d 1143, 1148 (Ala.Cr.App.), cert. denied, 554 So.2d 1152 (Ala.1989).'
>
> "*Harris v. State*, 594 So. 2d 725, 727 (Ala. Crim. App. 1991)."

946 So. 2d at 919-20.

Abbott specifically denied that he resided at the residence located at [address redacted] Ashford, Alabama. Even before the trial court at the suppression hearing, Abbott testified that he had never lived in Ashford, Alabama; that he had never spent the night at that residence; and that he had informed the officers that he did not reside at the property that was searched. Abbott presented no facts to the trial court that demonstrated a legitimate expectation of privacy in the area that was searched. Accordingly, he lacked sufficient standing to claim the protections of the Fourth Amendment in relation to the property that was searched. *See U.S. v. Sweeting*, 933 F. 2d 962, 964 (11th Cir. 1991) (no standing where defendants denied having any relationship to the premises other than access to them).

Even if Abbott had standing to challenge the search, he would not be entitled to relief on his claim of error. The State presented evidence that Abbott had been informed of the conditions of his parole, and that one of the conditions was that he was subject to a search of his person, his vehicles, or the homes or residences where he stayed at any time. The evidence presented permitted the inference that Abbott stayed at the residence at least some of the time and, therefore, it was subject to search under the terms of his probation, as the trial court determined.

The trial court did not err in denying Abbott's motion to suppress the evidence seized at the Ashford residence, and his claims to the contrary are without merit.

Doc. No. 10-8 at 4-5 (footnote and page reference omitted).

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held that federal habeas review of a state prisoner's Fourth Amendment claim is improper where the state courts have given the petitioner "an opportunity for full and fair litigation" of his claim. *Stone*, 428 U.S. at 482 ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."). This rule applies to all claims arising under the Fourth Amendment. *See, e.g., Cardwell v. Taylor*, 461 U.S. 571, 572 (1986) (holding that, under *Stone*, lower court should

not have considered whether custodial statements violated Fourth Amendment, and remanding to determine if the statements were involuntary under the Fifth Amendment).

Regarding the rule in *Stone*, the Court of Appeals for the Eleventh Circuit has explained that when facts are in dispute, "full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court," but when facts are not in dispute, "full and fair consideration is satisfied where the state appellate court, presented with an undisputed factual record, gives full consideration to defendants' Fourth Amendment claims." *Tukes v. Dugger*, 911 F.2d 508, 514 (11th Cir. 1990) (quotation marks and citations omitted). *See also Bradley v. Nagle*, 212 F.3d 559, 564-65 (11th Cir. 2000); *Caver v. State of Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978). The rule in *Stone* applies despite legal or factual error in the state court, and does not require a federal court to review the state court's factfinding or its application of Fourth Amendment law. *See Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994) (holding federal courts "are not to consider whether full and fair litigation of the claims in fact occurred in the state courts, but only whether the state provided an opportunity for such litigation"); *Caver*, 577 F.2d at 1192-93.

Here, Abbott was afforded an evidentiary hearing in the trial court on his motion to suppress on Fourth Amendment grounds. Doc. No. 22-2 at 117-71. Following the hearing, the trial court denied Abbott's motion to suppress. On appeal, the Alabama Court of Criminal Appeals discussed the facts and applicable Fourth Amendment law before denying Abbott relief. Abbott then sought further review of the decision before the Alabama Supreme Court, which denied Abbott's petition for writ of certiorari. The transcript, records, and state court decisions rejecting Abbott's motion to suppress make plain that the state courts fully and fairly considered the Fourth Amendment claim raised by Abbott. For purposes of *Stone*, then, the state provided Abbott a "full

and fair" opportunity to litigate his Fourth Amendment claim in the state courts, and this court is precluded from reviewing the state court's Fourth Amendment determination. *See Tukes*, 911 F.2d at 514; *Bradley*, 212 F.3d at 564-65. Consequently, Abbott is not entitled to habeas relief based on this claim.

**B.   Scope of Habeas Review for Claims Adjudicated on Merits by State Courts**

"When it enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress significantly limited the circumstances under which a habeas petitioner may obtain relief." *Hardy v. Allen*, 2010 WL 9447204, at *7 (N.D. Ala. Sep. 21, 2010). To prevail on a § 2254 claim adjudicated on the merits by the state courts, a petitioner must show that a decision by the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 404-05 & 412-13 (2000).

A state court's decision is "contrary to" federal law either if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Williams*, 529 U.S. at 404-06; *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's decision is an "unreasonable application" of federal law if it either correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 407. "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court

may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Williams*, 529 U.S. at 411; *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or ... could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011) (internal citations omitted).

Federal courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 1. *Sufficiency of the Evidence: Constructive Possession*

Abbott claims that the State's evidence was insufficient on each charge and that, therefore, the trial court erred by denying his motion for judgment of acquittal on all counts. Doc. No. 1 at 56-61. Specifically, Abbott maintains that the State failed to present sufficient evidence of possession because he did not reside at the residence where the drugs were discovered, did not exercise control over the drugs, and did not know of their presence. *Id*. Abbott presented this claim to the trial court and pursued it throughout the direct appeal process.

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In*

*re Winship*, 397 U.S. 358, 364 (1970).  Habeas relief on the merits of a claim of legally insufficient evidence is appropriate under § 2254 only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also Lewis v. Jeffers*, 497 U.S. 764, 781 (1990).

> [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." ...  [I]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson,* 443 U.S. at 318-19.  To be sufficient, the "evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Harrell*, 737 F.2d 971, 979 (11th Cir. 1984).

In addressing the sufficiency of the evidence to sustain Abbott's convictions, the Alabama Court of Criminal Appeals stated, in pertinent part:

> At trial, the prosecution presented both direct and circumstantial evidence establishing constructive possession.  [Lisa Marie] Hallford and [William] Fowler told officers that the home was Abbott's residence.  Fowler admitted that he also lived at the residence and allowed the officers to enter and search the residence.

> The officers testified that one of the bedrooms was Abbott's bedroom.  In this bedroom, the officers discovered (1) a wooden sign above the mirror that said "David's Place"'; (2) pictures of Abbott and his girlfriend; and (3) numerous DVDs with Abbott's name on them.  In addition, Hallford informed officers that she had purchased methamphetamine from Abbott and that Abbott had obtained the drugs from the closet in his bedroom.

> While searching the closet, officers removed an area of altered drywall and found cloth and plastic containers with marijuana, pills and jewelry.  The officers also found a safe that contained a large amount of methamphetamine and pills.

> Furthermore, Abbott attempted to escape when he saw the officers at the residence.  He drove his motorcycle around the officers, tried to leave the area at a high rate of speed, lost control, fell off the motorcycle, and then ran into the woods. *See, e.g., Ex parte Jones,* 541 So.2d 1052 (Ala. 1989) (flight is evidence of consciousness of guilt).

Furthermore, Abbott admitted at the time of his arrest that he had a glass tube smoking device and a pipe on his person.  From the motorcycle, the officers retrieved a black case with off-white crystals, a digital scale, and empty plastic baggies.

Upon our review, the prosecution presented sufficient direct and circumstantial evidence to prove Abbott's constructive possession of the controlled substances.

Doc. No. 10-8 at 8-9.

Abbott argues that the evidence "pointed directly" to Hallford and Fowler as the "true possessors of the drugs"[3] and could not connect him to the drugs or even to the residence where the drugs were found.  Doc. No. 1 at 57-59.

"Possession may be actual or constructive, joint or sole."  *United States v. Gunn*, 369 F.3d 1229, 1234 (11th Cir. 2004).  "A defendant has actual possession of a substance when he has direct physical control over the contraband."  *United States v. Edwards*, 166 F.3d 1362, 1363 (11th Cir.1999).  "A defendant's constructive possession of a substance can be proven by a showing of 'ownership or dominion and control over the drugs or over the premises on which the drugs are concealed.'"  *United States v. Clay*, 355 F.3d 1281, 1284 (11th Cir. 2004).  "While proximity to a contraband alone is not enough to establish constructive possession, 'where other circumstantial evidence … is sufficiently probative, proximity to contraband coupled with inferred knowledge of its presence will support a finding of guilt of such charges.'"  *Mobley v. State*, 563 So. 2d 29, 32 (Ala. Crim. App. 1990) (citing *Soriano v. State*, 527 So. 2d 1367, 1372 (Ala. Crim. App. 1988), and *United States v. Whitmire*, 595 F.2d 1303, 1316 (5th Cir. 1979)).

Here, ample evidence established Abbott's constructive possession of the drugs.  Numerous personal items linked to Abbott – including a sign with Abbott's name on it, pictures

---

[3] It is undisputed that Fowler lived in one of the two bedrooms in the residence where the drugs were found.  The evidence did not indicate that Hallford also lived at the residence.

of Abbott and his girlfriend, and DVDs with Abbott's name on them – were found in the bedroom where the drugs were located. *See, e.g.*, Doc. No. 22-2 at 196-200. The drugs were found concealed in the bedroom closet. *Id.* at 200-08. On the day of the search, upon seeing the officers at the residence, Abbott attempted to flee on his motorcycle and then on foot, giving rise to an inference of his consciousness of guilt. *Id.* at 192-93. Items associated with the weighing and packaging of drugs for sale – a digital scale and plastic baggies – were discovered on Abbott's motorcycle and in the bedroom where the drugs were found. *Id.* at 194, 208-11. Testimony was admitted indicating that Hallford told an officer at the scene that she had bought drugs from Abbott. Doc. No. 22-3 at 80. Sometime after the search, Abbott claimed as his own money that was recovered from the bedroom where the drugs were found. *See, e.g.*, Doc. No. 22-3 at 94-95, 111. The foregoing evidence would show Abbott's knowledge of the drugs and his control over them. *Clay*, 355 F.3d at 1284. Thus, there was sufficient evidence for a jury determination of Abbott's constructive possession of the drugs.[4]

---

[4] Within this same issue in his § 2254 petition, Abbott also asserts that, as to one of his convictions, the State failed to establish that the marijuana seized from the residence was for other than his personal use, an element of first-degree possession of marijuana as proscribed by § 13A-12-213, Ala. Code 1975. *See* Doc. No. 1 at 60-61. Abbott presented this argument on direct appeal, where the Alabama Court of Criminal Appeals held that the issue was not preserved for appellate review because Abbott did not make the same argument to the trial court in support of his motion for judgment of acquittal. *See* Doc. No. 1-8 at 9-10. Because the Alabama Court of Criminal Appeals stated clearly and expressly that its judgment rested on a procedural bar, and because this procedural bar is firmly established and regularly followed by Alabama appellate courts, Abbott's claim here is procedurally defaulted for purposes of federal habeas review. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Ford v. Georgia*, 498 U.S. 411, 424 (1991); *Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992); *see, e.g., Washington v. State*, 555 So. 2d 347 (Ala. Crim. App. 1989). A habeas petitioner can escape the procedural default doctrine either through showing cause for the default and resulting prejudice, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or establishing a "fundamental miscarriage of justice," which requires a colorable showing of actual innocence, *Schlup v. Delo*, 513 U.S. 298, 324-27 (1995). Abbott does not demonstrate cause for his procedural default or present a colorable claim of actual innocence. Therefore, his claim regarding possession of marijuana for other than personal use is foreclosed from habeas review.

The state court decision denying Abbott's sufficiency-of-the-evidence claim was neither contrary to nor an unreasonable application of clearly established federal law; nor did it involve an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) & (2).  Therefore, Abbott is not entitled to habeas relief on this claim.

### 2.  *Prosecutor's Comment: Motion for Mistrial*

Abbott contends that the trial court erred by denying his motion for mistrial based on the prosecutor's allegedly improper comment during the State's closing argument.  Doc. No. 1 at 62-66.

Considering this claim on direct appeal, the Alabama Court of Criminal Appeals stated:

> Abbott claims that the trial court committed reversible error by not granting the motion for mistrial he made during the State's closing argument.  Although the closing arguments were not transcribed, defense counsel objected during the argument and stated, "There was no testimony of any meth sale by my client."  The trial court sustained the objection and provided a curative instruction to the jury:
>
>> "Ladies and gentlemen, if you hear anything – this is the standard thing I tell juries from time to time.  If you hear the attorneys argue anything on either side that is different from what you recollect the evidence to be, then, of course, you understand that it's your recollection which would control and not the recollection of the attorneys."
>
> Defense counsel then proffered that the prosecutor had argued that Abbott had sold drugs at the residence, and that the argument was inaccurate and prejudicial.  Defense counsel also moved for a mistrial, which the trial court denied.
>
> Alabama courts have repeatedly held that a mistrial is a drastic remedy, to be used sparingly and only to prevent manifest injustice.  The decision whether to grant a mistrial rests within the sound discretion of the trial court and the court's ruling on a motion for a mistrial will not be overturned absent a manifest abuse of that discretion.  *See, e.g., Banks v. State*, 919 So. 2d 1223 (Ala. Crim. App. 2005).
>
> "A mistrial is an extreme measure which should be granted only when the prejudice caused by the comment cannot be eradicated by instructions or other curative actions of the trial court."  *Bowers v. State*, 629 So. 2d 793, 794 (Ala. Crim. App. 1993), citing *Hurst v. State*, 469 So. 2d 720 (Ala. Crim. App. 1985).  Having reviewed the prosecutor's comment and the trial court's curative instruction, we

> hold that the trial court did not abuse its discretion when it denied Abbott's motion for a mistrial.  The curative instruction given by the trial court was sufficient to prevent any error that might have resulted from the prosecutor's comment.  *See Living v. State*, 796 So.2d 1121, 1140-41 (Ala. Crim. App. 2000).

Doc. No. 10-8 at 10-11 (page references omitted).

Prosecutorial misconduct is a basis for reversing a defendant's conviction only if, in the context of the entire trial and in light of any curative instruction, the misconduct may have prejudiced the substantial rights of the accused.  *United States v. Odom*, 858 F.2d 664 (11th Cir.1988); *United States v. Collins*, 779 F.2d 1520 (11th Cir.1986).  *See United States v. Harmas*, 974 F.2d 1262, 1269 (11th Cir. 1992) ("A prosecutor's comments [in closing argument] must be viewed in the context of the record as a whole, and will be the basis of reversal only if they result in prejudice affecting the substantial rights of the defendant.").  A prejudicial remark may be rendered harmless by a curative instruction.  *United States v. Lichenstein*, 610 F.2d 1272 (5th Cir. 1980). The Supreme Court has determined that "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Darden v. Wainwright*, 699 F.2d 1031, 1036 (11th Cir. 1983)).  The relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Isolated passages of a prosecutor's argument, even if imperfect, do not suggest that a jury will be so profoundly affected so as to affect the fundamental fairness of a trial.  *Id*. at 646-47. The appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id*. at 642.

Here, following the challenged comment, the trial court sustained defense counsel's objection and immediately issued a curative instruction.[5]  Doc. No. 22-3 at 131-33.  As there were no further objections by defense counsel, it appears that the prosecutor thereafter desisted from any such remarks or references.  When fairly considered in the context of the entire trial, the challenged comment did not so infect the trial with unfairness as to make the resulting conviction a denial of due process.  The Alabama Court of Criminal Appeals' decision denying Abbott relief on this claim was neither contrary to nor an unreasonable application of clearly established precedent, and it was not an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1) & (2).  This issue does not provide Abbott with a basis for habeas relief.

### 3.   Chain of Custody

Abbott claims that the trial court erred by admitting certain evidence over the defense's chain-of-custody objection.  He argues, as he did in state court, that the evidence was logged in by a police investigator, Ray Mock, after it was removed from the scene by officers who participated in the search of the residence, so that Mock could not testify to where the evidence was actually located when it was seized, and that the name of the evidence technician who received the evidence from Mock was not on the evidence log.  Doc. No. 1 at 67-75.

The Alabama Supreme Court has discussed the requirements for establishing the chain of custody:

> "'*Ex parte Holton*, 590 So.2d 918 (Ala.1991), sets forth the legal analysis to be applied in determining if a proper chain of custody has been established:

---

[5] The court notes that, on cross-examination, Ray Mock, an investigator with the Dothan Police Department, testified without objection from defense counsel that Lisa Marie Hallford told him that she had bought drugs from Abbott.  Doc. No. 22-3 at 80.  Mock did not state that Hallford specified the kind of drugs Abbott sold to her or that Abbott sold the drugs to her from the Ashford residence where the search was conducted.

""""The chain of custody is composed of 'links.'  A 'link' is anyone who handled the item.  The State must identify each link from the time the item was seized.  In order to show a proper chain of custody, the record must show each link and also the following with regard to each link's possession of the item: '(1) [the] receipt of the item; (2) [the] ultimate disposition of the item, i.e., transfer, destruction, or retention; and (3) [the] safeguarding and handling of the item between receipt and disposition.'   Imwinklereid, *The Identification of Original, Real Evidence*, 61 Mil.L.Rev. 145, 159 (1973).

""""If the State, or any other proponent of demonstrative evidence, fails to identify a link or fails to show for the record any one of the three criteria as to each link, the result is a 'missing' link, and the item is inadmissible.  If, however, the State has shown each link and has shown all three criteria as to each link, but has done so with circumstantial evidence, as opposed to the direct testimony of the 'link,' as to one or more criteria or as to one or more links, the result is a 'weak' link.  When the link is 'weak,' a question of credibility and weight is presented, not one of admissibility.'"

"'590 So.2d at 20.  While each link in the chain of custody must be identified, it is not necessary that each link testify in order to prove a complete chain of custody. *Harrison v. State*, 650 So.2d 603 (Ala. Crim. App. 1994).'"

*Ex parte Slaton*, 680 So.2d 909, 918 (Ala. 1996).

In Abbott's case, the Alabama Court of Criminal Appeals held that the State presented sufficient testimony and documentation of the chain of custody to prove that the evidence collected, tested, and presented at trial was both authentic and had been not tampered with, "so that even if some of the links were weak, the evidence was properly admitted."  Doc. No. 10-8 at 13.

The record confirms that the testimony from the State's witnesses was sufficient to establish a proper chain of custody of the evidence. At trial, Officer Will Johnston, Abbott's probation officer, testified that the evidence retrieved from Abbott and from the Ashford residence was taken into custody at the residence by him and the other officers who participated in the search.

16

Doc. No. 22-3 at 15, 19.  Johnston stated that the evidence was then turned over to Investigator Mock of the Dothan Police Department when Mock, who did not participate in the search, arrived at the scene.  *Id*.  According to Johnston, when Mock arrived, the officers who participated in the search informed Mock regarding where the items of evidence had been found, so that Mock could prepare an inventory of the evidence.  *Id*. at 19.  Mock testified that he retrieved the evidence from Officer Johnston at the scene and created an evidence log based on what the officers told him regarding where the evidence was found.  *Id*. at 24, 29-34, 63-64, 88-89, 96.  Mock stated that he then provided the evidence and evidence log to the Evidence Technician, Becky Edwards, who keeps the evidence in the police department's evidence vault until later providing the evidence for testing and the preparation of a report by the State forensics lab.  *Id*. at 34-35.  The evidence was then returned from the lab to Becky Edwards.  *Id*.

The testimony from the State's witnesses was sufficient to demonstrate that the evidence was in substantially the same condition when it was tested as when it was obtained.  *See McCray v. State*, 548 So.2d 573, 576 (Ala. Crim. App. 1988).  The state court decision finding that Abbott was not entitled to relief on this claim of error was neither contrary to nor an unreasonable application of clearly established federal law, and it did not involve an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1) & (2).  Abbott is not entitled to habeas relief.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and this case be DISMISSED with prejudice.

The Clerk of the Court is DIRECTED to file the Recommendation of the Magistrate Judge and to serve a copy on the petitioner.  The petitioner is DIRECTED to file any objections to this Recommendation on or before November 29, 2016.  Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the petitioner objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 15th day of November, 2016.

/s/ Susan Russ Walker
Susan Russ Walker
Chief United States Magistrate Judge

18